### REEVE v. McMANN et al.

(Supreme Court, Appellate Division, First Department. May 11, 1900.)

NOTE—PAYMENT—EVIDENCE.

> There is evidence for the jury on the issue of payment of a note of $1,000 given by defendants' testator, F., to plaintiff, dated January 2, 1893, payable six months after date, defendants having introduced a note of $1,000, dated July 1, 1895, claimed to be a renewal of the note of July 2, 1893, and other notes admitted to be in renewal of the note of July 1, 1895, the last of which, dated May 11, 1897, was paid, and there being evidence that in 1896 and subsequently plaintiff made a positive statement that the amount of F.'s then indebtedness to him was $1,000, though plaintiff in testimony which contained contradictions swore that he made more than one loan of $1,000 to F.
>
> Ingraham, J., dissenting.

Appeal from trial term, New York county.

Action by Clifford C. Reeve against William E. McMann and others, executors of Edward Flanagan, deceased. From a judgment on a verdict for defendants, and from an order denying motion for new trial, plaintiff appeals. Affirmed.

Argued before VAN·BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and INGRAHAM, JJ.

Edward Kaufmann, for appellant.

G. F. O'Shaunessy, for respondents.

PATTERSON, J. There are two causes of action set forth in the complaint herein. The first is upon a promissory note made by the defendants' testator, Edward Flanagan, and dated January 2, 1893, by which the maker promised to pay, six months after the date thereof, to the order of Mary E. Flanagan or C. C. Reeve, the sum of $1,000. For a second cause of action the plaintiff declared upon a promissory note made by the defendants' testator, Edward Flanagan, and dated May 11, 1897, by which the maker promised to pay, six months after the date thereof, to the order of Mary E. Flanagan or C. C. Reeve, $1,000. After the action was brought, the note set forth in the second cause of action was paid by the defendants. The case proceeded upon the first cause of action only, as to which the defense interposed and insisted upon at the trial was payment. There was no direct evidence of the fact of payment of the first note, but the defendants undertook to establish that by ·a·series of renewals of the first note, running along from the date of the maturity of that note to the date of the note set forth in the second cause of action, the indebtedness represented by the first note was continued until it was finally extinguished by the payment of the last in the series of renewals, namely, the note declared upon in the second cause of action. On the trial the plaintiff introduced in evidence the note dated January 2, 1893, and rested, whereupon the defendants undertook to prove the affirmative defense. They produced and put in evidence a number of promissory notes for $1,000 each, signed by Edward Flanagan, and made to the same payees as the note of·January 2, 1893, all of which notes, it is claimed, were renewals of the note set

out in the first cause of action. That note matured July 5, 1893. The defendants did not produce any note claimed to be a renewal, nor show any agreement for a renewal covering the interval between July, 1893, and July, 1895; the first of those claimed to be renewal notes being dated July 1, 1895. If the defense rested alone upon this evidence, it would, of course, have failed. The defendants, however, introduced testimony to show that in February, 1896, the plaintiff made statements and declarations to the effect that Edward Flanagan, the maker of the note, was then indebted to him in the sum of $1,000, and, learning that Flanagan was seriously ill, he demanded a note which should represent that indebtedness of $1,000. Such a note was made, and delivered to him. After the death of Edward Flanagan, which occurred in 1897, the attorney representing his estate had an interview with the plaintiff, and he testified that in that interview the plaintiff only claimed an indebtedness of $1,000, which was assumed to be the indebtedness represented by the note set forth in the second cause of action, and which was subsequently paid. At the close of the defendants' proofs, the plaintiff moved for a direction of a verdict in his favor on the ground that no evidence had been produced sustaining the defense of payment. That motion was denied, and thereupon the plaintiff, as a witness, testified that he had had three transactions with Edward Flanagan, lending him three separate sums of $1,000 at three separate times, and he produced checks for the respective amounts. He swore that the note set forth in the first cause of action was given for a separate and independent loan of money; that it never had been renewed, and never had been paid; that he did not insist upon its payment during the lifetime of Edward Flanagan because he relied upon a statement of Flanagan that it would be paid whenever he (the plaintiff) desired it. He also testified that the note sued upon in the second cause of action was a separate and independent thing, and that it was a renewal of previous notes which had been held by him, but surrendered to Edward Flanagan or his representatives. He denied that he ever had stated that his demand against Edward Flanagan was limited to the sum of $1,000. He contradicted himself upon many material points concerning his statements and declarations as to the amount of Edward Flanagan's indebtedness to him. The defendants had introduced testimony showing that while the defendants' testator was very seriously ill, in February, 1896, the plaintiff called at the testator's residence, demanded to see him, stated that he held a note of $1,000, expressed great anxiety concerning it, and drew up a note which he insisted should be presented to Edward Flanagan for signature, in order that he might have evidence satisfactory to himself of Flanagan's indebtedness to him. The defendants' witness also testified that he had then with him an overdue note of $1,000. The plaintiff denied that such an occurrence took place. He first swore that he did not have a note with him. He also said that he did not prepare a note, and request that Edward Flanagan be asked to sign it. He also denied that he made any statement concerning the amount of Flanagan's indebtedness to him. In another part of his testimony he swore that he had two notes

with him at the time.   He also swore that he did not draw a note for Flanagan to sign.   The defendants, in corroboration of what their witness had testified to, produced in evidence the unsigned form of a promissory note, which they asserted had been prepared by the plaintiff, and left by him to be signed by Flanagan.   At the close of the proofs the plaintiff did not renew his motion for a direction of a verdict, but acquiesced in the issue going to the jury.   In a very clear and concise way the court left it to the jury to say whether the defendants' indebtedness represented by the note of January 2, 1893, was merged in the indebtedness represented by the note of May 11, 1897 (which was paid), or whether it was an independent obligation, and never renewed; the justice saying that, if it were an independent obligation, and never renewed, they should find a verdict for the plaintiff, for in that case the note was never paid; but, on the other hand, if they found the note of January 2, 1893 (the note in suit), was not an independent obligation, but was renewed, and carried into the note of May 11, 1897, which was paid, they should find a verdict for the defendants.

We think the case upon the issue of payment was properly disposed of by the jury.   The documentary evidence consisting of notes claimed to have been renewals was not of itself sufficient to establish the payment of the note of January 2, 1893.   But there was evidence that in 1896, and subsequently, the plaintiff made a most positive declaration that the amount of Edward Flanagan's then indebtedness to him was the sum of $1,000.   He never claimed $2,000, and was anxious only to secure $1,000.   There is proof that there was an outstanding note of the last-mentioned amount made by Edward Flanagan, and held by the plaintiff, and that it was one of the series of admitted renewals merged in the note of May 11, 1897, and that evidence of the plaintiff's own declaration of the amount (in 1896) of Edward Flanagan's indebtedness to him was some evidence to go to the jury that the note of January 2, 1893, had been extinguished, or merged in the subsequent notes, as must have been the case if there was but one indebtedness of $1,000.   On the other hand, the plaintiff's testimony would have demolished the defendants' theory, but it was for the jury to say whether they would believe the interested party; and upon the contradictions in his testimony they were authorized to reject his statements.   He never at any time until after the death of Edward Flanagan made any claim or demand for $2,000, or pretended to hold notes aggregating more than $1,000.

Some criticism is made by the plaintiff upon the defense being proven in the exact form in which it is pleaded, but the substance of that defense is payment.   We think there was enough to go to the jury, and that the verdict should not be disturbed.

The judgment and order appealed from must be affirmed, with costs.   All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting).   I think the verdict of the jury was without evidence to sustain it.   The action was upon a promissory note dated January 2, 1893, by which the defendants' testator promised to pay to the plaintiff $1,000.   There was no dispute but that

the defendants' testator made and executed this note, and the only defense was that the said note was paid by the execution and delivery by the defendants' testator to the plaintiff of the defendants' testator's promissory note dated about July 2, 1893, for the sum of $1,000; that the said renewal note was, by its terms, made payable six months after its date, was indorsed by the payee, and accepted by the plaintiff in full satisfaction of the note set forth in the complaint. I cannot find the slightest evidence to sustain this defense. No note dated July 2, 1893, is produced. There is no witness who ever saw such a note executed or delivered. There is not a particle of evidence that any such note ever was made, delivered, or received by the plaintiff. The plaintiff was called as a witness, and expressly swore that no such note was given to him, and that the note in suit was never paid; and his testimony in that respect is not contradicted. The defendant, however, sought to sustain this defense by proof that several years after the date of the note in suit the plaintiff was in possession of another note for $1,000, made by the defendants' testator, similar in form to the note in suit; that such other and later note was renewed from time to time; that one was in existence at the time of the death of the defendants' testator, which had been paid; and that some time before the defendants' testator died the plaintiff came to his house, and said that the defendants' testator owed him $1,000. But there was introduced in evidence a check of the plaintiff's, payable to the order of the defendant, dated January 2, 1894,—a year after the date of the note in suit,—for the sum of $1,000, which was indorsed and collected by the defendants' testator; and the plaintiff swears that this subsequent note was given for a loan of money represented by this latter check, and this is not disputed by testimony of any kind. So, all we really have to sustain this allegation of the payment of the note in suit by the giving of a new note is the fact that at one time the plaintiff insisted that the defendants' testator owed him $1,000, and did not at that time make any claim for the note in suit. That such testimony, in the face of a distinct denial under oath by the plaintiff, is sufficient to prove this defense of payment, seems to me to be answered by a mere statement of the proposition.

I think the judgment should be reversed, and a new trial ordered.